**CATERPILLAR, INC., in its fiduciary capacity; Wayne M. Zimmerman, as Plan Administrator; and Northern Trust Company, as Trustee, Plaintiffs,**

v.

**INTERNATIONAL UNION, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) and its affiliated Local 145, 751, 786, 974, 1415, and 2096, Defendants.**

No. 94–1346.

United States District Court,
C.D. Illinois,
Peoria Division.

Aug. 31, 1995.

Daniel L. Johns and L. Lee Smith, Westervelt, Johnson, Nicoll & Keller, Peoria, IL, Theodore E. Rhodes and Lauren Spiliotes, Steptoe & Johnson, Washington, DC, for plaintiffs.

Stanley Eisenstein, Irving Friedman and Harold Katz, Katz, Friedman, Schur & Ea-

gle, Chicago, IL, and Leonard Page and Nancy Schiffer, UAW Legal Dept., Detroit, MI, for defendants.

### ORDER

MIHM, Chief Judge.

This matter comes before the Court on Defendant International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America's ("UAW") Motion for Summary Judgment and Plaintiffs' Cross–Motion for Summary Judgment. To the extent set forth herein, the UAW's Motion for Summary Judgment is GRANTED IN PART, DENIED IN PART, AND RESERVED IN PART and the Plaintiffs' Cross–Motion for Summary Judgment is GRANTED IN PART, DENIED IN PART, AND RESERVED IN PART.

### BACKGROUND

Plaintiff Wayne M. Zimmerman is the plan administrator of Caterpillar, Inc.'s ("CAT") group medical benefit plan (the "CAT Plan"). Plaintiff Northern Trust Company is the trustee of the assets of the CAT Plan. Defendant UAW is an international union which represents certain CAT employees.

On June 21, 1994, the UAW declared a nationwide strike against CAT. The parties agree that a strike is a "qualifying event" within the meaning of the Employee Retirement Income Security Act ("ERISA") of 1974. 29 U.S.C. § 1163(2). Accordingly, striking CAT employees and their dependents who were covered under the CAT Plan on the day before the strike were eligible to elect continuation coverage under the CAT Plan pursuant to the provisions of the Consolidated Omnibus Budget Reconciliation Act ("COBRA") of 1985. 29 U.S.C. § 1161–69. COBRA allows employees who suffer qualifying events to continue their coverage under an employer's group health plan for certain time periods defined in 29 U.S.C. § 1162(2). Individuals electing COBRA continuation coverage must pay a premium to their employers. When an employee who elected continuation coverage becomes covered under another group health plan not containing any pre-existing exclusions, the employer may terminate the continuation coverage. 29 U.S.C. § 1162(2)(D)(i).

During the 1991–92 CAT strike, the UAW paid CAT directly for the cost of maintaining strikers under the CAT Plan. At the commencement of the current strike, the UAW decided to provide health coverage directly to some of its members and recommended that other strikers elect COBRA coverage under the CAT Plan. Local union officers and UAW benefit representatives interviewed strikers to determine which strikers had a risk of significant medical claims. Strikers identified as having a pre-existing medical conditions or a history of medical costs in excess of the COBRA premium were asked to elect COBRA. Strikers whose medical expenses were predicted to be less than the COBRA premium were covered under the UAW's self-funded program.

The UAW hired third-party administrators AMERAPLAN and NCAS to pay the medical claims for strikers who did not elect COBRA. The UAW advised the third-party administrators to provide medical benefits according to the Group Health Program outlined in the 1988–91 Collective Bargaining Agreement between CAT and the UAW. UAW Response to Plaintiffs' First Discovery Request at 3. The UAW's Strike Fund provides funds to cover the costs of medical benefits to strikers who did not elect COBRA and to pay the COBRA premiums for strikers who elected continuation coverage under the CAT Plan. Id. at 4, 12. Evidence in the record also indicates that a yet-undetermined number of strikers who elected COBRA had certain medical claims, including prescription drug bills, paid by the UAW.

### DISCUSSION

■ In this action, Plaintiffs seek declarations that the UAW's program of providing health benefits to striking employees constitutes a group health plan within the meaning of ERISA, 29 U.S.C. § 1167(1), and that the UAW's group health plan covers all striking employees such that no striking employees are eligible for COBRA continuation coverage under the CAT Plan. Plaintiffs further seek restoration to the Northern Trust Company of the amount of benefit claims paid

under the CAT Plan on behalf of striking employees who are ineligible for coverage under the Plan due to coverage under a group health plan maintained by the UAW. The Court has jurisdiction over this matter pursuant to 29 U.S.C. § 1132(a)(3)(B). *See Winstead v. J.C. Penney Co., Inc.*, 933 F.2d 576, 579 (7th Cir.1991).

The UAW moved for summary judgment on Plaintiffs' Second Amended Complaint, and Plaintiffs filed a Cross–Motion for Summary Judgment. Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A motion for summary judgment must demonstrate, based on the record, an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(e). The record and all justifiable inferences drawn from it are viewed in the non-movant's favor. *Id.* at 255, 106 S.Ct. at 2513–14.

COBRA provides that an employer can terminate continuation coverage on:

The date on which the qualified beneficiary first becomes, after the date of the election—

(i) covered under any other group health plan (as an employee or otherwise) which does not contain any exclusion or limitation with regard to any pre-existing condition of such beneficiary.

29 U.S.C. § 1162(2)(D)(i). COBRA defines the term "group health plan" as an employee welfare benefit plan that provides medical care to participants and beneficiaries directly, through insurance, reimbursement, or otherwise. 29 U.S.C. § 1167(1). The term "employee welfare plan" means a plan, fund, or program established or maintained by an

employee organization for the purpose of providing for its participants, through the purchase of insurance or otherwise, medical benefits. 29 U.S.C. § 1002(1). A plan has been established under ERISA if "a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809, 811–12 (7th Cir.1994) (*quoting Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982)). A written plan document need not exist for a plan to be covered under ERISA. *Id.* at 811. The UAW's health care program for strikers not electing COBRA satisfies each of the requisite elements by providing (i) determinable medical benefits, i.e., benefits described in the 1988–91 Collective Bargaining Agreement between CAT and the UAW; (ii) to a specific category of beneficiaries, i.e., strikers and their dependents who did not elect COBRA; (iii) through an identified funding source, i.e., the UAW Strike Insurance Fund; and (iv) with specified procedures for receiving benefits, i.e., by filing claims with designated third-party administrators. Thus, the UAW's program is an employee welfare plan within the meaning of Section 3(1) of ERISA and a "group health plan" under COBRA.

The UAW argues, however, that a 1975 Secretary of Labor Regulation conclusively establishes that the UAW's Strike Insurance Program is not an employee welfare benefit plan within the meaning of Title I of ERISA. The Regulation provides:

For purposes of title I of the Act [ERISA] ... the terms "employee welfare plan" and "welfare plan" shall not include a fund maintained by an employee organization to provide payments to its members during strike and for related purposes.

29 C.F.R. § 2510.3–1(h). The UAW argues that since a strike fund does not constitute a welfare plan for purposes of ERISA, the UAW's program of providing health care coverage to strikers is not a group health plan within the meaning of COBRA. The UAW maintains that the Secretary's Regulation is entitled to deference.

When reviewing an agency's construction of a statute, a court must initially determine whether Congress has spoken to the precise issue. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).[1] If Congress has spoken and its intent is clear, contrary interpretations by the agency must be rejected. *Id.* at 842–43, 104 S.Ct. at 2781.

> If the statute is clear and unambiguous "that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." ... The traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress.

*Board of Governors, FRS v. Dimension Financial Corp.,* 474 U.S. 361, 368, 106 S.Ct. 681, 685, 88 L.Ed.2d 691 (1986) (*quoting Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781). Only where a statute is "silent or ambiguous" with respect to the specific question must a court defer to a permissible agency construction. *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782. To determine whether Congress has spoken directly to the issue involved in this case, the plain language of the statute must be examined. *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988). "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute would produce a result demonstrably at odds with the intentions of its drafters.' " *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989).

ERISA's provisions expressly include programs maintained by employee organizations to provide medical benefits within the definition of welfare plan. 29 U.S.C. § 1002(1). An "employee organization" includes:

> [A]ny labor union or any organization of any kind, or any agency or employee representation committee, association, group,

or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers, concerning an employee benefit plan, or other matters incidental to employment relationships; or any employees' beneficiary association organized for the purpose, in whole or in part, of establishing such a plan.

29 U.S.C. § 1002(4). Thus, Congress clearly and unambiguously intended that ERISA's requirements apply to both unions and employers. COBRA incorporated ERISA's definition of welfare plan, which includes plans sponsored by employee organizations, into its definition of group health plan. 29 U.S.C. § 1167(1). Congress did not exempt labor unions providing health benefits to their members during strikes from COBRA's definition of group health plan or COBRA's dictates. Accordingly, the Secretary's Regulation conflicts with the plain language of ERISA and COBRA, which include within their requirements union plans, funds, and programs providing medical benefits to participants and their beneficiaries.

To the extent that ERISA and COBRA can be considered silent or ambiguous on the question of whether a union's program of providing health benefits to strikers constitutes a welfare plan, the Secretary's Regulation is not controlling because it fails to address this precise issue. The definition of a welfare plan under ERISA includes any "plan, fund, or program" of an employer or employee organization that provides medical benefits. The Regulation relied on by the UAW states only that a "fund maintained by an employee organization to provide payments to its members during a strike" does not constitute a welfare plan under ERISA. Moreover, the Department of Labor's Notice of Proposed Rulemaking regarding the strike fund Regulation published in the Federal Register stated only that:

> A strike fund is not a welfare plan under section 3(1) of the Act. Although unemployment benefits are among the benefits

---

**1.** "A precondition to deference under *Chevron* is a congressional delegation of administrative authority." *Adams Fruit Co., Inc. v. Barrett,* 494 U.S. 638, 649, 110 S.Ct. 1384, 1390, 108 L.Ed.2d 585 (1990). In this case, that delegation is found

in 29 U.S.C. § 1135, which provides that the Secretary of Labor "may prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter."

listed in section 3(1), a strike is not to be equated with unemployment.

Neither the proposed Regulation nor the preamble to the final Regulation indicates how ERISA treats employee organization programs which provide health benefits to members of employee organizations and are funded through a strike fund.

Plaintiffs do not claim that the UAW's Strike Fund is a welfare plan. Instead, they claim that the program of paying strikers' medical bills through third-party administrators is a welfare plan. An ERISA plan can exist separate and apart from a funding arrangement which does not qualify as an ERISA plan. The existence of a funding vehicle which is separate and apart from a plan has been recognized in the context of a trust that is used to provide benefits to employees of unrelated employers. The Department of Labor has indicated that such a multiple-employer trust is not an ERISA plan, but is instead the funding vehicle for plans that may qualify as ERISA plans established at the individual level. Department of Labor Information Letter, 1985 ERISA LEXIS 57 (Jan. 18, 1985). The Seventh Circuit has also recognized that an ERISA plan can exist apart from its funding vehicle. *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732 (7th Cir.1986). In *Miniat*, the Seventh Circuit considered whether a group life insurance plan established by an employer existed apart from the trust established by a life insurance company to hold premium payments for the life insurance. The Seventh Circuit found that "[t]he ... Plan is distinct from the ... trust, even though the ... Plan funds the benefits that it provides by the mechanism of the ... trust." *Miniat*, 805 F.2d at 738–39.

The only Labor Department Advisory Opinion that refers to the Strike Fund Regulation considered whether the Southern Labor Union's Emergency Relief Fund which paid benefits for authorized work stoppages was a welfare plan under ERISA. The Advisory Opinion stated:

> To the extent that the Emergency Relief Fund provides benefits to members for "strikes" or related purposes, the Emergency Relief Fund would also appear to meet the criteria of regulation section 2510.3–1(h). We note, however, that the term "strike" within the meaning of regulation section 2510.3–1(h) is not equated with unemployment. While it is outside the scope of the opinion to interpret the term "authorized work stoppage" as used in the Emergency Relief Fund rules and regulations, the Department takes the position that regulation section 2510.3–1(h) would not be applicable if the term "authorized work stoppage" refers to mere unemployment rather than strikes.

> Accordingly, the Emergency Relief Fund does not appear to be an employee welfare benefit plan within the meaning of section 3(1) of title I of ERISA unless the term "authorized work stoppage" is interpreted to refer to mere unemployment rather than strikes. If the term is not so interpreted, the Emergency Relief Fund would not constitute a plan covered under title I of ERISA and would not have to comply with that title, including Part 1 thereof relating to the reporting and disclosure requirements. On the other hand, if the Emergency Relief Fund is interpreted to provide benefits upon unemployment, the Emergency Relief Fund would constitute an employee welfare benefit plan subject title I of ERISA.

Department of Labor Opinion No. 92–01A. The Department's analysis of whether the union's Emergency Relief Fund constituted an ERISA welfare plan focused on whether benefits paid in the event of an authorized work stoppage refer to "mere unemployment rather than strikes." The advisory opinion did not consider whether a union's program of paying health benefit claims from the Emergency Relief Fund during a strike would constitute an employee welfare benefit plan.

Although the Secretary's Regulation states that all payments from a strike fund are exempt from ERISA and does not limit the exemption to payments in the form of wage supplements or wage replacements, it can reasonably be inferred from the Department of Labor's Notice of Proposed Rulemaking and Advisory Opinion 92–01A that the Department's intention in issuing the Regula-

tion was to clarify that a strike is not to be equated with unemployment. The Strike Fund Regulation was issued ten years before Congress amended ERISA to add the CO-BRA requirements. Clearly, the Department of Labor did not consider at that time the question of whether a union's program which provides medical benefits to strikers from a strike fund as an alternative to CO-BRA coverage was a group health plan under COBRA. The Department has not specifically discussed the situation found in this case where an employee organization provides health care coverage to its members during a strike. In the absence of clear authority indicating that the Regulation's exception for strike funds from ERISA's definition of welfare plan was intended to apply to an employee organization's program of providing medical benefits during a strike, the Regulation could be read as only excluding from ERISA's reporting, disclosure, fiduciary, and other requirements an employee organization's fund which provides weekly payments to strikers. It would be reasonable to conclude that the Regulation merely clarifies that a fund which makes compensation payments during unemployment may constitute an ERISA welfare plan providing unemployment benefits, but a fund which makes similar payments in the event of a strike does not constitute an ERISA plan because a strike is not synonymous with unemployment. The UAW argues that the Regulation's reference to payments is unrestricted. The UAW maintains that the Regulation does not state "payments in the form of wage supplements or unemployment benefits" and that all payments from a strike fund are exempt, without restriction. The UAW asserts that a union's strike fund which provides medical reimbursement to strikers is "payments for related purposes" under the Regulation. Moreover, ERISA's definition of "employee welfare benefit plans" draws no distinction between plans which provide unemployment benefits and those which provide medical benefits. Thus, the UAW argues, it would be irrational to interpret the Regulation as making such a distinction. Regardless of the status of the UAW Strike Fund under ERISA, the UAW's separate program of providing health benefits, financed by a strike fund, to its members who did not elect CO-BRA continuation coverage constitutes an employee welfare benefit plan under ERISA and a group health plan within the meaning of the COBRA requirements.

■ Plaintiffs further assert that the UAW's health care program covers all strikers, not just those who were instructed to waive COBRA coverage. COBRA defines "group health plan" as an "employee welfare benefit plan providing medical care to participants or beneficiaries directly or through insurance, reimbursement, or otherwise." 29 U.S.C. § 1167(1). Plaintiffs argue that because the UAW pays the premiums that the CAT Plan charges for COBRA coverage from a designated account within the UAW Strike Fund, the strikers who have elected COBRA have become covered under another group health plan and CAT can discontinue COBRA coverage. However, COBRA provides that an employer can only terminate continuation coverage when a qualified beneficiary first becomes "covered under any other group health plan." 29 U.S.C. § 1162(2)(D)(i). Strikers who have elected COBRA have not become covered under another group health plan by virtue of the fact that the UAW pays for their COBRA premiums. They are covered under the same health plan COBRA required CAT to maintain.

Plaintiffs also argue that strikers who elected COBRA are covered under the UAW plan because the UAW has said it would act as a safety net or assume ultimate responsibility for providing medical benefits if CAT did not comply with its COBRA obligations. The Seventh Circuit's recent opinion in *Lutheran Hosp. of Indiana, Inc. v. Business Men's Assur. Co. of America*, 51 F.3d 1308 (7th Cir.1995), rejected such an argument. COBRA does not say "that a beneficiary's rights terminate when he or she becomes *eligible for* additional or alternative group health insurance." (emphasis added). *Id.* at 1312. "[A]n employee loses the right to continuation coverage only if he or she chooses after the election date to accept coverage under another group health plan." *Id.* The UAW's statements indicate that strikers who elected COBRA are merely eligible for UAW

health coverage and have not become covered under the UAW plan.

Plaintiffs argue that the element of employee choice critical to the analysis in *Lutheran* is lacking in this case. However, no evidence in the record suggests that the UAW forced or coerced strikers to elect COBRA. *See* Affidavit of Sal Menchaca, Director of the UAW Strike Assistance Department, at ¶ 9 (stating that "[n]o striker was forced to elect the COBRA option."). Plaintiffs assert that the UAW, not the strikers, made the real economic decision with respect to continuation coverage because the UAW agreed to pay all the COBRA premiums. Plaintiffs maintain that the UAW manipulated COBRA to reduce its own financial exposure and shifted the cost of strikers at risk of incurring significant medical expenses to CAT while covering the healthier strikers under the UAW Plan. Congress clearly anticipated that employees with histories of significant medical claims would be more likely to elect COBRA and continue coverage with the former employer or former plan, and nothing in ERISA or COBRA prevents a third party from advising employees on whether to elect COBRA based on their medical histories.

What remains unresolved are issues related to a group of strikers who elected COBRA but had some of their medical claims, mostly prescription bills, paid by the UAW. Plaintiffs argue that when the UAW paid these medical bills, the strikers became covered under another group health plan and that CAT was entitled to cancel their COBRA coverage. The parties are currently exchanging information and conducting discovery regarding the UAW's payment of medical bills for strikers who elected COBRA. After the parties finish discovery on this issue, the Court will rule on whether these strikers became covered under another group health plan such that CAT may terminate their COBRA coverage.