William A. STEEN; Harold Hedlund; Timothy Sandis; John Heindel; Lawrence Wlezien; Wilbur Lockman; Norman Neste, as Trustees and land surveyors of California Trust, and the consulting engineers and land surveyors of California Health and Life Insurance Plan, Plaintiffs–Appellants,

v.

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY; Association Administrators and Consultants, Inc., Defendants–Appellees.

William A. STEEN, Plaintiff,

v.

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant–Appellant,

and

ASSOCIATION ADMINISTRATORS AND CONSULTANTS, INC., Defendant,

v.

Robert LEMOND; James Wooten; Daniel Ogden; Milton Bell; Robert Bennett; David Lancaster, Trustees of the Texas Society of Architects Insurance Benefit Trust (Texas Trustees); Donald Melander; Michael Wirtanen; Arnold Lucke;

Robert Mayeron; Thomas H. Stahl, Trustees of the Minnesota Society, American Institute of Architects Employee Benefits Trust ("Minnesota Trustees"), Third–Party–Defendants–Appellees.

Nos. 95–15874, 95–16061.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 13, 1996.

Decided Feb. 10, 1997.

 

David A. Riegels, Diepenbrock, Wulff, Plant & Hannegan, LLP, Sacramento, CA, for defendant–appellee–cross–appellant John Hancock.

Gerald Welter, Welter and Greene, Los Angeles, CA, for defendant-appellee Association Administrators & Consultants, Inc.

Before WIGGINS and TROTT, Circuit Judges, and VANCE,* District Judge.

## OPINION

WIGGINS, Circuit Judge.

The California Council of Civil Engineers and Land Surveyors ("Cal Council"), an association of California employers engaged in civil engineering and surveying, established a trust fund ("Cal Council Trust"), through which it purchased insurance from John Hancock Mutual Life Insurance Co. ("John Hancock") to provide health insurance benefits to the employees of its member employers. As part of the insurance agreement, Cal Council and John Hancock established a Rate Stabilization Reserve ("RSR"), administered by Association Administrators & Consultants ("AA & C"), under which an amount equaling twelve percent of the annual premium paid by the Cal Council Trust to John Hancock was to be set aside to offset potential premium increases caused by unforeseen increases in claims paid on the John Hancock policy. Under the agreement, the RSR balance was to be returned to the Cal Council if it withdrew from the insurance agreement after sufficient notice. When John Hancock terminated the agreement, a dispute over the amount due from the RSR to the Cal Council arose.

The Civil Engineers and Land Surveyors of California ("CELSOC") was created as a result of a merger between the Cal Council and another trade organization of civil engineers and surveyors. CELSOC provides health and welfare benefits to its members' employees through the CELSOC Trust, the successor in interest to the Cal Council Trust. The Trustees of the CELSOC Trust

Peta Lewis Hallisey, Sacramento, CA, and David M. Cooke, Manley, Burke, Lipton & Cook, Cincinnati, OH, for plaintiffs–appellants–cross–appellees.

* Hon. Sarah S. Vance, United States District Judge for the Eastern District of Louisiana, sitting by designation.

brought several claims in the district court against John Hancock and AA & C seeking recovery of the RSR funds, pursuant to Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. The district court found that it lacked federal question jurisdiction, based on the collateral estoppel effect of our unpublished opinion in *American Institute of Architects Benefit Insurance Trust v. John Hancock Mutual Life Insurance Co.*, No. 87–6492, 1988 WL 91140 (9th Cir. Aug.29, 1988) (hereinafter "*AIA–BIT*"). The Trustees appeal. We have jurisdiction under 28 U.S.C. § 1291 and AFFIRM in part and REVERSE and REMAND in part.

## FACTS

CELSOC is a trade association of California employers engaged in civil engineering and land surveying. CELSOC was formed as the result of a 1992 merger between two predecessor organizations, the Cal Council and the Consulting Engineers Association of California ("Consulting Engineers"). Each of those organizations had maintained an insurance trust to provide health and welfare benefits to its members' employees and their dependents. Contributions to the trusts were made by both employers and employees. The Cal Council Trust was one employers organization trust that participated in what is collectively known as the Design Professionals Group Insurance Plan ("DPGIP").[1] As recognized by the district court, "the DPGIP is not itself a legal entity of any kind, but merely a term of convenience for the participating trusts as a group."

The trusts that participated in the DPGIP all independently purchased insurance from John Hancock for the employer members of their respective regional trade associations. The employers, in turn, provided the insurance as a benefit to their employees. The Cal Council trust and the other DPGIP trusts entered into a Rate Stabilization Reserve Agreement ("RSR Agreement"), nego-

tiated and administered by AA & C. The object of the RSR Agreement was for each participant trust to maintain a balance of twelve percent of its annual premium paid to John Hancock. The RSR was designed to stabilize premium payments by allowing John Hancock to draw from the reserve where there had been a significant increase in benefits paid, instead of increasing the premium rates beyond the rate of inflation for medical and other benefits. AA & C and John Hancock were to assure that any DPGIP trust whose RSR balance fell below twelve percent of the annual premium would make up the shortfall within five years.

This arrangement was terminated when John Hancock withdrew as the insurer for the DPGIP trusts on September 30, 1991. The RSR Agreement contains explicit provisions for the distribution of RSR funds upon the withdrawal of an individual trust, but does not separately provide for the distribution of funds upon termination of the agreement by John Hancock. The CELSOC Trustees allege that at the time of the termination of the RSR Agreement, the Cal Council Trust's RSR balance was approximately $3,000,000, but that John Hancock only returned $1,310,111.68 as the undisputed sum owed to the Cal Council Trust. The Trustees claim that John Hancock used the balance of the funds in Cal Council's RSR to offset negative RSR balances of other DPGIP Trusts, and to pay claims that had been incurred under Cal Council's policy but not paid prior to John Hancock's termination of the insurance policy.

On September 23, 1993, the CELSOC Life and Health Insurance Plan and the Trustees of the CELSOC Trust filed suit against John Hancock and AA & C seeking declaratory relief, equitable reformation of contract, and imposition of a constructive trust and accounting, based on John Hancock's breach of fiduciary duty and participation as "parties-in-interest" in prohibited transactions in violation of 29 U.S.C. § 1106. The Trustees alleged that the district court had jurisdiction

---

1. The other trusts involved in DPGIP included several trusts formed by state organizations of the American Institute of Architects, the Texas Society of Architects Insurance Benefit Trust, the Architects' National Employers Trust, and the Louisiana Architects Association Group Insurance Trust.

to consider its claims pursuant to 29 U.S.C. § 1132(e)(1), which gives the district court jurisdiction over ERISA claims brought by an ERISA plan "participant, beneficiary, or fiduciary."

On July 29, 1994, pursuant to Fed.R.Civ.P. 12(b)(1), John Hancock moved to dismiss the Trustee's complaint for lack of jurisdiction, arguing that the CELSOC Plan and the CELSOC Trustees lacked standing to sue under ERISA, and that "the issue of subject matter jurisdiction with respect to the claims presented in [the Trustee's] complaint has already been litigated and found to be lacking" in the Ninth Circuit's unpublished 1988 opinion of *AIA–BIT*. In *AIA–BIT*, one of the DPGIP participant trusts sued John Hancock, AA & C, and the trustees of the other DPGIP participant trusts seeking the return of more than $2,000,000 from its RSR account, which the parties to the RSR Agreement alleged AIA–BIT had forfeited by voluntarily withdrawing from the RSR Agreement without giving sufficient notice of its intention to withdraw from the agreement. Pursuant to a motion to dismiss brought by the trustees of the other DPGIP participant trusts, including the trustees of the predecessor trusts to CELSOC, and joined in by John Hancock and AA & C, the district court in *AIA–BIT* dismissed for lack of diversity and lack of a federal question.

On appeal, we affirmed, ruling "that the DPGIP was not an employee welfare benefit plan subject to ERISA jurisdiction," *AIA–BIT*, 1988 WL 91140 at **3, and "that the defendants were not fiduciaries, for the purposes of ERISA jurisdiction under 29 U.S.C. § 1132(e)(1)." *Id.* at **4. The defendants were not ERISA fiduciaries because the RSR funds were not ERISA funds, but rather "a slightly more complex variation of a rather common practice where an insurance company set premiums and then set up reserve accounts that allow the smoothing out of fluctuations over the long run." *Id.* (quoting district court opinion). Finally, we concluded that the plaintiffs did not satisfy the jurisdictional requirements for a prohibited transactions claim because the RSR funds were not ERISA assets and the defendants were not ERISA fiduciaries. *Id.* at **4.

Here, the district court noted several factual disputes that were potentially relevant to the Trustees' ERISA theory:

the intent of the contracting parties as to the nature and use of RSR funds, the actual management of those funds, and the degree of Hancock's discretionary control over the RSR both during the life of the DPGIP and after its dissolution. If this court's independent determination of the matter were required, an evidentiary hearing ... might be warranted.

The district court concluded, however, that the collateral estoppel effect of *AIA–BIT* required the action to be dismissed for lack of subject matter jurisdiction. While noting a lack of clarity in our *AIA–BIT* memorandum opinion, the district court concluded that we had determined in *AIA–BIT* "that the RSR was not a[n ERISA] fund asset." *See* 1988 WL 91140 at **3. Because the CELSOC Trust was in privity with the Cal Council Trust, and because the district court concluded that *AIA–BIT* was a decision on the merits, the district court determined that the *AIA–BIT* decision had preclusive effect on the Trustees claim in this matter. The district court also concluded that the Supreme Court's decision in *John Hancock Mutual Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993) (hereinafter *"Harris Trust"*), did not undercut our factual determination in *AIA–BIT* that the RSR funds at issue were premiums, and not ERISA funds held by the insurer anticipating the future purchase of additional insurance policies. John Hancock's motion to dismiss was granted.

## DISCUSSION

The Trustees argue that the district court erred by determining that *AIA–BIT* collaterally estopped it from relitigating any of the factual issues essential to its claim, and alternatively that the Supreme Court's decision in *Harris Trust* effectively overruled *AIA–BIT*'s conclusions that the RSR funds were not ERISA funds. The Trustees also argue that jurisdiction of the district court can properly be premised solely on the CELSOC Health and Life Insurance Plan's status as an ERISA plan, and that notwithstanding

the RSR funds' status as an asset of an ERISA plan, the Trustees, as fiduciaries of an ERISA plan, can bring a claim against the defendants, as "parties in interest," under 29 U.S.C. § 1002(14), for engaging in prohibited transactions in violation of 29 U.S.C. § 1106.

John Hancock argues that the Ninth Circuit's conclusion regarding subject matter jurisdiction in *AIA–BIT* was binding on the district court, and that the Supreme Court's holding in *Harris Trust* does not defeat *AIA–BIT*'s collateral estoppel effect. In the alternative, John Hancock argues that the CELSOC Health and Life Insurance Plan itself does not have standing to maintain an ERISA action, and that the Trustees do not have standing to bring an ERISA claim because they have failed to establish that they are fiduciaries of an ERISA plan.

## I. STANDARD OF REVIEW

■■ The district court's granting of John Hancock's motion to dismiss for lack of jurisdiction is appropriately reviewed under our standard for reviewing summary judgment motions. Usually, a district court is free to hear evidence regarding jurisdiction and to resolve factual disputes in determining whether it has jurisdiction over a claim. *Careau Group v. United Farm Workers of Am.,* 940 F.2d 1291, 1293 (9th Cir.1991). "However, where jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits, 'the trial court should employ the standard applicable to a motion for summary judgment.'" *Id.* (quoting *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983)). Here, the existence of an ERISA plan and the alleged occurrence of breaches of fiduciary duty and prohibited transactions are factual determinations necessary to establish both the merits of the Trustees' claims and ERISA jurisdiction. Thus, application of the summary judgment standard is proper. We review a district court's grant of summary judgment *de novo. Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). "We must determine whether the evidence, viewed in a light most favorable to the non-moving party, presents any genuine

issues of material fact and whether the district court correctly applied the law." *Id.*

■■ We review the availability of collateral estoppel *de novo. Pardo v. Olson & Sons, Inc.,* 40 F.3d 1063, 1066 (9th Cir.1994). To the extent that the collateral estoppel effect of *AIA–BIT* bars the relitigation of certain issues, there will be no genuine issues of material fact with respect to those issues. However, if collateral estoppel does not bar the relitigation of any issue, we must determine whether any genuine issues of material fact remain.

## II. THE COLLATERAL ESTOPPEL EFFECT OF OUR UNPUBLISHED DECISION IN *AIA–BIT*

The district court concluded that the Trustees' entire claim against AA & C and John Hancock was barred by the collateral estoppel effect of our decision in *AIA–BIT.* Although we agree that relitigation of the RSR funds' status as ERISA funds and AA & C and John Hancock's status as ERISA fiduciaries is barred by *AIA–BIT,* we conclude that the issue of the CELSOC Plan's status as an ERISA plan and the Trustees prohibited transaction claim is not barred by *AIA–BIT.*

■■ " 'Collateral estoppel, or issue preclusion, bars the relitigation of issues actually adjudicated in previous litigation between the same parties.' " *Kamilche Co. v. United States,* 53 F.3d 1059, 1062 (9th Cir.1995) (quoting *Clark v. Bear Stearns & Co.,* 966 F.2d 1318, 1320 (9th Cir.1992)), *amended on rehearing,* 75 F.3d 1391 (9th Cir.1996). "[T]he doctrine of collateral estoppel can apply to preclude relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action." *United States v. Stauffer Chem. Co.,* 464 U.S. 165, 170–71, 104 S.Ct. 575, 578, 78 L.Ed.2d 388 (1984).

■■ Collateral estoppel applies not only against actual parties to prior litigation, but also against a party that is in privity to a party in previous litigation. *Shaw v. Hahn,* 56 F.3d 1128, 1131 (9th Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 418, 133 L.Ed.2d 336 (1995). The Trustees do not

dispute that the parties in this case were parties in *AIA–BIT,* or in privity with them.[2] Historically, however, courts have been cautious when applying collateral estoppel where the parties in the proceeding in which the application of collateral estoppel is sought were not adversaries in the litigation that resulted in the decision that has alleged collateral estoppel effect. *See, e.g.,* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4450 (1981) (discussing the rules that "have emerged to govern the limits within which a judgment should preclude later relitigation among former coparties," and noting that a more modern rule applied by a number of federal courts holds that "[c]oparties are precluded from relitigating any issue they had a full and fair opportunity to litigate, without regard to whether they were in any sense adversaries in the prior action"). Some courts, for example, deny the application of collateral estoppel where the parties in litigation were coparties in previous litigation and did not litigate an issue adversely to one another. *See, e.g., Clark–Cowlitz Joint Operating Agency v. Federal Energy Reg. Comm'n,* 826 F.2d 1074, 1080 (D.C.Cir.1987) (holding that "[i]ssue preclusion ... attaches only to such issues as the parties litigated adversely to each other in the prior litigation."), *cert. denied,* 485 U.S. 913, 108 S.Ct. 1088, 99 L.Ed.2d 247 (1988); *see also* Restatement (Second) of Judgments § 38 (1982) ("Parties who are not adversaries to each other under the pleadings in an action involving them and a third party are bound by and entitled to the benefits of issue preclusion *with respect to issues they actually litigate fully and fairly as adversaries to each other*

and which are essential to the judgment rendered.") (emphasis added).[3]

■ In this circuit, however, the fact that two parties were coparties in prior litigation is not a bar to the application of collateral estoppel. In *American Triticale, Inc. v. Nytco Services, Inc.,* 664 F.2d 1136, 1147 (9th Cir.1981), we held that a judgment entered in a previous action in which the parties had been codefendants who had not filed any cross-claims against each other did not have any res judicata effect because there had not been any adjudication between the parties on any cause of action. We also held that collateral estoppel did not bar the relitigation of a particular factual issue, but only because the issue had not been conclusively determined in the previous suit. *Id.* Thus, in *American Triticale,* the parties' status as codefendants in the previous litigation barred the application of res judicata, but would not have barred the application of collateral estoppel if the issue for which collateral estoppel effect was sought had been actually litigated in the earlier proceeding. *Id.* However, because the Cal Council and John Hancock were codefendants in *AIA–BIT,* we must be particularly careful in determining whether *AIA–BIT* involved the "actual, full, and fair litigation" of the issues to which collateral estoppel applies. *See Alumax Mill Prods. v. Congress Fin. Corp.,* 912 F.2d 996, 1012 (8th Cir.1990) (noting that "[f]ederal courts generally do not apply collateral estoppel, or issue preclusion, between parties who were codefendants in the prior action," because the "prior action is usually not considered the 'actual, full, and fair litigation' necessary to apply collateral estoppel.").[4]

2. It is undisputed that the CELSOC Trust is the successor trust to two original RSR signatories, the Cal Council Trust and the Consulting Engineers Trust. *Cf. Pilkington PLC v. Perelman,* 72 F.3d 1396, 1398–1401 (9th Cir.1995) (holding that fiduciaries of successor pension plan had standing to sue fiduciaries of predecessor plan for breach of fiduciary duty in choosing insurance company for predecessor plan).

3. "This court has, in the past, relied upon the Restatement of Judgments to 'mark[ ] the way through this murky area.'" *Kamilche,* 53 F.3d at 1062 (quoting *Starker v. United States,* 602 F.2d 1341, 1344 (9th Cir.1979)).

4. *See also Franklin Stainless Corp. v. Marlo Transp. Corp.,* 748 F.2d 865, 867 (4th Cir.1984) ("An element of collateral estoppel, or issue preclusion, is actual, full, and fair litigation between the parties, especially when they previously were aligned on the same side of an action."); *RX Data Corp. v. Department of Social Servs.,* 684 F.2d 192, 196–97 (2d Cir.1982) (holding that "the absence of adversity in the first state court action does not automatically preclude a collateral estoppel effect" as long as the issues in both suits are identical and the determination of the issue in the prior suit was necessary and essential to the judgment); 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4450 (1981) (noting

With this caution in mind, we turn to the rules that govern our examination of the *AIA–BIT* opinion. "The party asserting collateral estoppel must first show that the estopped issue is identical to an issue litigated in a previous action. In addition, '[i]n order for collateral estoppel to apply, the issue to be foreclosed in the second litigation must have been litigated and decided in the first case.'" *Kamilche*, 53 F.3d at 1062 (quoting *Starker*, 602 F.2d at 1344) (other citation omitted); *see also Durkin v. Shea & Gould*, 92 F.3d 1510, 1515–16 (9th Cir.1996) (collateral estoppel requires "a final judgment on the merits"). "Collateral estoppel is inappropriate if there is any doubt as to whether an issue was actually litigated in a prior proceeding." *Eureka Fed. Sav. & Loan Ass'n v. American Casualty Co. of Reading, Penn.*, 873 F.2d 229, 233 (9th Cir. 1989); *see also Durkin*, 92 F.3d at 1515. "'If the decision could have been rationally grounded upon an issue other than that which the defendant seeks to foreclose from consideration, collateral estoppel does not preclude relitigation of the asserted issue.'" *Id.* (quoting *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1518–19 (9th Cir.1985)).

In *Kamilche*, we adopted four factors, articulated by the Restatement (Second) of Judgments, to be considered in determining whether the issue in a proceeding is identical to an issue previously litigated:

(1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?

(2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?

(3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?

(4) how closely related are the claims involved in the two proceedings?

*Id.* at 1062 (quoting Restatement (Second) of Judgments § 27 cmt. c (1982)).

Applying the principles articulated in *Kamilche*, we conclude that the Trustees are barred from relitigating the RSR funds' status as ERISA assets and John Hancock's status as an ERISA fiduciary because those issues are identical to issues decided in *AIA–BIT*. In *AIA–BIT* we clearly ruled that, regardless of AIA–BIT's status as an employee welfare benefit plan, "the RSR was not a fund asset" and that John Hancock, AA & C, and the other defendants were not ERISA fiduciaries with respect to those funds. 1988 WL 91140 at **4. In this case, we are presented with the same RSR agreement as that considered in *AIA–BIT*, and CELSOC bases its breach of fiduciary duty claim against John Hancock and AA & C on the RSR funds' status as ERISA funds and John Hancock's and AA & C's status as ERISA fiduciaries. Thus, the issues of the RSR funds' status as ERISA funds and AA & C and John Hancock's status are identical to issues decided in *AIA–BIT*.

The determination of an issue on a motion for judgment on the pleadings or a motion for summary judgment is sufficient to satisfy the "litigated" requirement for collateral estoppel. Restatement (Second) of Judgments § 27 cmt. d (1982); *see also In re Zelis*, 66 F.3d 205, 208 (9th Cir.1995) (giving collateral estoppel effect to issue decided in response to motion to dismiss). The district court correctly noted that our *AIA–BIT* decision made references to inadequate pleadings. *See, e.g.,* 1988 WL 91140 at **4. However, the district court also correctly concluded that because the jurisdictional inquiries and the merits of the ERISA claim were intertwined in *AIA–BIT*, as they are here, our inquiry in *AIA–BIT* went beyond merely the adequacy of pleading, and reached the merits of AIA–BIT's jurisdictional allegations pursuant to the summary judgment standards. We decided that there were no circumstances under which AIA–BIT could show that the RSR funds were ERISA funds, or show that AA & C or John Hancock were ERISA fiduciaries. *Id.* at **3–**4. Thus, the issues we decided in

the desirability of a "test that simply asks whether the former coparties had a full and fair opportunity to litigate the issues resolved by the prior judgment.").

*AIA–BIT* were litigated, even though decided pursuant to a motion on the pleadings. Moreover, because AIA–BIT's claim was dismissed pursuant to a motion brought by, *inter alia*, the Cal Council, in which it argued that "[t]he RSR funds are not and cannot be the asset of an employee benefit plan by virtue of the plaintiffs' own pleading." Thus CELSOC, by not only participating in, but actually initiating the motion that led to the district court and Ninth Circuit decisions, received "actual, full, and fair litigation" of the issue of the RSR funds' and John Hancock and AA & C's status.

▇ The Trustees argue that the collateral estoppel effect of the *AIA–BIT* decision regarding RSR funds and AA & C's John Hancock's status as a fiduciary is nullified by the Supreme Court's decision in *Harris Trust*. In *Harris Trust*, the Court held that funds deposited with an insurance company by a trust to secure retirement benefits, which were initially commingled with the general funds of the insurance company but could be converted into a guaranteed stream of benefits for retirees during the life of the contract, were ERISA plan assets, which required John Hancock's treatment of those funds to meet fiduciary standards. 510 U.S. at 101–07, 114 S.Ct. at 527–29. Even assuming this holding would compel a different result in *AIA–BIT* were that case decided today, the mere fact that the *AIA–BIT* case may have been erroneous when decided is not sufficient to preclude the collateral estoppel effect of *AIA–BIT* in the present case.

In *Richey v. United States Internal Revenue Service*, 9 F.3d 1407 (9th Cir.1993), we indicated that the possible application of the limited exceptions to the doctrine of collateral estoppel requires three inquiries: "(1) whether the issues presented are in substance the same in the present and prior litigation; (2) whether controlling facts or legal principles have changed significantly since the prior judgment; and (3) whether 'other special circumstances warrant an exception to the normal rules of preclusion.'"

*Id.* at 1410 (quoting *Montana v. United States*, 440 U.S. 147, 155, 99 S.Ct. 970, 975, 59 L.Ed.2d 210 (1979)). However, the *Richey* court noted that "a *fact, question* or *right* distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law." *Id.* (quoting *Montana*, 440 U.S. at 162, 99 S.Ct. at 978 (quoting *United States v. Moser*, 266 U.S. 236, 242, 45 S.Ct. 66, 67, 69 L.Ed. 262 (1924))). *See also Segal v. AT & T*, 606 F.2d 842, 845 (9th Cir.1979) (noting exception to collateral estoppel where "*[t]he issue is one of law* and ... a new determination is warranted in order to take account of a intervening change in the applicable legal context" and noting that "[i]ssue preclusion has never been applied to issues of law with the same rigor as to issues of fact") (quoting current Restatement (Second) of Judgments, § 28(2) (1982)) (emphasis added).[5]

▇ In *AIA–BIT*, we concluded that the organization of the RSR among the DPGIP participants was not an ERISA plan. 1988 WL 91140 at **3. Even assuming that an employee welfare benefit plan existed, we concluded that "the RSR was not a fund asset," and that John Hancock and the other participants in the RSR agreement were not ERISA fiduciaries. *Id.* at **4. Whether a plan is an ERISA plan is a finding of fact. *Moideen v. Gillespie*, 55 F.3d 1478, 1481 (9th Cir.1995); *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266 (9th Cir.1991); *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir.1988), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989). Likewise, a conclusion that someone is not an ERISA fiduciary is essentially a factual conclusion. *See Thomas, Head & Greisen Employees Trust v. Buster*, 24 F.3d 1114, 1116 (9th Cir.1994) (holding that the district court's finding that an individual was an ERISA fiduciary was "essentially" a factual issue, which could not be set aside unless

5. *See also* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4425 (Supp.1996) ("Preclusion generally is appropriate if both the first and second action involve application of the same principles of law to an historic fact setting that was complete by the time of the first adjudication."). *AIA–BIT* construed the same RSR agreement that is at issue here.

clearly erroneous), *cert. denied*, —— U.S. ——, 115 S.Ct. 935, 130 L.Ed.2d 881 (1995). Thus, a change in the law does not justify denying collateral estoppel effect to our factual conclusions in *AIA–BIT* that the RSR arrangement was not an ERISA plan, that the RSR was not a fund asset, and that AA & C and John Hancock were not ERISA fiduciaries.

 Even if any of the conclusions in *AIA–BIT* were characterized as legal conclusions, those legal conclusions could only be reexamined if there had been a " 'significant change in the legal climate' " since *AIA–BIT. Kamilche* 53 F.3d at 1063 n. 3; *see also Montana,* 440 U.S. at 161, 99 S.Ct. at 977 (stating that collateral estoppel will apply "unless there have been major changes in the law"). "[I]t is only an intervening *change* in the law that defeats collateral estoppel—the correctness of a prior ruling, even if based upon erroneous application of the law, is irrelevant." *Richey,* 9 F.3d at 1412 (intervening Supreme Court decision did not constitute a change in the law where it relied on settled principles and no claim was made that the Circuit had ever applied a contrary rule).

The Supreme Court's decision in *Harris Trust* was a matter of statutory interpretation. 510 U.S. at 93–99, 114 S.Ct. at 523–25. It did not discount any prior caselaw. While the parties in *Harris Trust* argued that the decision would conflict with an interpretation consistently adhered to by the Department of Labor, *id.* at 105–08, 114 S.Ct. at 529–30, the Supreme Court ultimately concluded that "the Department apparently had no firm position" regarding the interpretation of the ERISA provision in question. *Id.* at 109–11, 114 S.Ct. at 531. The Trustees have made no showing that *Harris Trust* constituted a change in the law regarding which funds in the hands of insurance companies are ERISA funds, and we have found no authority to indicate that it constituted such a change.[6] A reading of *AIA–BIT* alone is not sufficient in this case to demonstrate that the law in this circuit was different prior to

*Harris Trust.* Assuming arguendo that *Harris Trust* indicates that we erroneously applied the law in *AIA–BIT,* that alone would not provide a ground for relief from collateral estoppel. We conclude that *Harris Trust* does not nullify the collateral estoppel effect of our holding in *AIA–BIT* that the RSR funds are not ERISA funds and John Hancock and AA & C are not ERISA fiduciaries.

Though the Trustees' breach of fiduciary duty claim against John Hancock and AA & C is barred by collateral estoppel, the Trustees raise two additional arguments in support of federal jurisdiction based on ERISA: (1) that the CELSOC Health Plan is an "employee welfare benefit plan" that is maintained by an employee organization which is not subject to any of the exceptions for qualification as an ERISA plan, thus providing a basis for ERISA jurisdiction; and (2) that it can bring a claim against John Hancock and AA & C for "prohibited transactions," pursuant to 29 U.S.C. § 1106, regardless of the defendants' status as fiduciaries or the RSR funds' status as the asset of an ERISA plan. We conclude that the litigation of these issues is not barred by *AIA–BIT.*

We recognize that there are several confusing aspects to our *AIA–BIT* decision, and the discussion of AIA–BIT's status as an ERISA plan is among the most confusing. In the introduction to the discussion session, the *AIA–BIT* opinion states explicitly, "We hold that the AIA–BIT was not an employee welfare benefit plan because it was really a multiple employer trust...." 1988 WL 91140 at **1. The section specifically discussing whether there was an employee welfare benefit plan subject to ERISA jurisdiction was prefaced by the question, "Was AIA–BIT an Employee Welfare Benefit Plan?" *Id.* The panel determined that "AIA–BIT adequately pled enough facts in its complaint to withstand a dismissal on the question of whether it was a *bona fide* employers association for the purpose of ERISA." *Id.* at **2. Despite this conclusion, however, the *AIA–BIT* panel then switched its analysis to the parties to the

---

**6.** We have cited *Harris Trust* only once in a published opinion, and only for its holding that the McCarran–Ferguson Act does not preempt ERISA's fiduciary standards in areas governed by state insurance laws. *See Kayes v. Pacific Lumber Co.,* 51 F.3d 1449, 1456–57 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 301, 133 L.Ed.2d 206 (1995).

RSR Agreement, and based on the determination that the AA & C "held complete and exclusive authority over the disposition of funds in the RSR" under the RSR agreement, it concluded that the RSR arrangement was a multiple employer trust, and "that the DPGIP was not an employee welfare benefit plan subject to ERISA jurisdiction." *Id.* at **3.[7]

■ Because John Hancock, AA & C, and the Cal Council were all codefendants in *AIA–BIT*, we must be particularly cautious in giving collateral estoppel effect to our decision in *AIA–BIT*. We believe that because of the apparent confusion in our *AIA–BIT* disposition that there is doubt about whether AIA–BIT's status as an ERISA plan was actually litigated, and for this reason alone, statements about AIA–BIT's status do not have collateral estoppel effect. *See Eureka Fed. Sav.,* 873 F.2d at 233. Moreover, Cal Council argued in its motion to dismiss before the district court in *AIA–BIT* that the RSR was not an ERISA Plan; it did not base its lack-of-ERISA-jurisdiction argument on AIA–BIT's failure to be an ERISA plan, and certainly did not argue that the Cal Council Plan itself was not an ERISA plan. John Hancock and AA & C made an insufficient showing that Cal Council had an "actual, full, and fair" opportunity to litigate the ERISA status of AIA–BIT or the Cal Council Plan. Thus, litigation of the ERISA status of the Cal Council Plan, and its successor in interest, the CELSOC Plan, is not barred by our opinion in *AIA–BIT*.

■ The Trustees have also asserted a claim against John Hancock and AA & C as a "party-in-interest," as defined by 29 U.S.C. § 1002(14), for engaging in prohibited transactions with an ERISA plan in violation of 29 U.S.C. § 1106(a)(1).[8] In *AIA–BIT*, we stated that AIA–BIT could not bring a prohibited transaction claim against the defendants because we determined that AIA–BIT could not "satisfy the jurisdictional requirements for ERISA." 1988 WL 91140 at **4. It does not appear, however, that the issue of whether AIA–BIT could bring a claim for prohibited transactions under 29 U.S.C. § 1106 was litigated before the district court in *AIA–BIT*. AIA–BIT's complaint only mentioned § 1106 in reference to the alleged fiduciary duties and status of the defendants, and the district court's oral decision did not mention a § 1106 claim. None of the records from *AIA–BIT* before us indicates that the Cal Council made any arguments regarding any § 1106 claim that AIA–BIT might have purported to make. Thus, we conclude that there is insufficient evidence that Cal Council had an "actual, full, and fair" opportunity to litigate whether a claim could be brought against John Hancock or AA & C for engaging in prohibited transactions.

In sum, we conclude that the Trustees's breach of fiduciary duty claims against AA & C and John Hancock are barred by the collateral estoppel effect of *AIA–BIT*, because we concluded in that case that the RSR funds were not ERISA plan assets and AA & C and John Hancock were not ERISA fiduciaries. We also conclude, however, that the CELSOC Plan's status as an ERISA plan

---

7. The district court observed that the *AIA–BIT* memorandum disposition "appears to confuse the DPGIP as a whole with its component trusts, the RSR with its component contributions, and the DPGIP itself with the RSR. The trusts are sometimes inaccurately referred to as Plans and vice versa." This is an accurate characterization of our *AIA–BIT* disposition, which makes the collateral estoppel effect of *AIA–BIT* on this issue particularly confusing. The district court also noted "that the court of appeals' discussion [in *AIA–BIT*] follows similar confusion and contradiction in the briefs and argument of the parties," which is also apparent in the case at hand.

8. 29 U.S.C. § 1106(a)(1) reads:
 A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he

knows or should know that such transaction constitutes a direct or indirect—
 (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
 (B) lending of money or other extension of credit between the plan and a party in interest;
 (C) furnishing of goods, services, or facilities between the plan and a party in interest;
 (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan; or
 (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of [29 U.S.C. § 1107(a)].
 29 U.S.C. § 1106(a)(1) (1994).

and the Trustees' prohibited transaction claim is not barred by collateral estoppel.

## III. JURISDICTION OVER THE PROHIBITED TRANSACTION CLAIM

The Trustees argue that they have standing to bring a claim under ERISA because they are ERISA fiduciaries, and because AA & C and John Hancock, as "parties in interest," engaged in transactions with ERISA funds that are prohibited by 29 U.S.C. § 1106. Even though AA & C and John Hancock are not ERISA fiduciaries, there were sufficient issues of material fact regarding the Trustees' status as ERISA fiduciaries and AA & C and John Hancock's alleged participation in prohibited transactions to bar judgment in favor of AA & C and John Hancock on the Trustees' claims under 29 U.S.C. § 1106.

■ The district court erred in its determination that an ERISA plan can only have existed at the level of the individual employer-members of CELSOC, rather than at the level of CELSOC itself. An ERISA "employee welfare benefit plan" is:

(1) a plan, fund or program

(2) established or maintained

(3) by an employer or by an employee organization, or by both,

(4) for the purpose of providing medical, surgical, hospital care, [or] sickness ... benefits ...

(5) to the participants or their beneficiaries.

*Moideen,* 55 F.3d at 1481 (quoting *Kanne,* 867 F.2d at 492 (internal quotations omitted)); *see also* 29 U.S.C. § 1002(1) (1994). An employer is "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes *a group or association of employers acting for an employer in such capacity.*" 29 U.S.C. § 1002(5) (emphasis added).

The Department of Labor has interpreted § 1002(5) to require a bona fide "organizational relationship" among the alleged association of employees other than a mere association among employers for the purpose of securing benefits. *Moideen,* 55 F.3d at 1481

(citing Department of Labor opinions). Thus in *Moideen,* where membership in the United Association of Small Businesses was open to any business with fewer than 500 employees, in any industry, the members lacked "the commonality of interest that forms the basis for sponsorship of an employee welfare benefit plan," *id.* (quoting Dep't of Labor Op. No. 94–07A (Mar. 14, 1994)), needed to make a multiple employer insurance plan an ERISA plan. *See also Crull v. Gem Ins. Co.,* 58 F.3d 1386, 1389 (9th Cir.1995) ("We have held that a multiple employer trust comprised of heterogeneous, unrelated employers is not an ERISA employer."); *Kanne,* 867 F.2d at 493 (holding that plan sponsored by Associated Builders and Contractors was an ERISA plan); *Credit Managers,* 809 F.2d at 625 (holding that Master Trust was not an employer with respect to the beneficiaries of the plan where members were "heterogeneous, unrelated employers," but concluding that component trusts that participated in plan "whose members would be in the same line of business and geographical area" could qualify as ERISA plans).

■ Participation in the CELSOC Plan is limited to the employer-members of CELSOC, and was in the past limited to members of the Cal Council. Membership in CELSOC is limited to California firms engaged in civil engineering and land surveying. Thus, based on the facts before us, the members of CELSOC are not heterogeneous, unrelated employees, but rather members in the same line of business and geographical area.

■ The CELSOC plan is not otherwise disqualified as an employee welfare benefit plan by 29 C.F.R. § 2510.3–1(j) (1995), which provides:

"employee welfare benefit plan" ... shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization under which

(1) No contributions are made by an employer or employee organization;

(2) Participation [in] the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

If any of these criteria is not satisfied, the CELSOC Plan is not excluded from ERISA coverage. *Kanne,* 867 F.2d at 492–93. The record reveals that employers make contributions to the CELSOC Plan, and that CELSOC regularly promotes the plan to its members. Thus, requirements (1) and (3) of § 2510.3–1(j) are not satisfied. Based on the record before us, the district court erred by concluding that CELSOC was not an employer for ERISA purposes and that an ERISA plan did not exist at CELSOC's level.[9]

John Hancock is correct that the CELSOC Plan itself does not have standing to sue under 29 U.S.C. § 1132(a), which limits eligibility for civil enforcement of ERISA to ERISA plan participants, beneficiaries, and fiduciaries, and the Secretary of Labor. *Corder v. Howard Johnson & Co.,* 53 F.3d 225, 230 n. 4 (9th Cir.1994). However, if the trustees are fiduciaries of the plan, they have standing to bring a claim against John Hancock and AA & C "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3) (1994).

John Hancock correctly notes that the CELSOC Trust Agreement indicates that CELSOC itself is the "named fiduciary" for purposes of 29 U.S.C. § 1102(a)(2). However, as both the Trust Agreement and ERISA indicate, the "named fiduciary" is not the only individual that has fiduciary duties with respect to the Trust and Plan. According to the Trust Agreement, a "fiduciary" includes, *inter alia,* any person who "exercises any discretionary authority or discretionary control respecting management of a Plan or this Trust or exercises any authority or control respecting management or disposition of its assets." This provision is nearly identical to one of the definitions of fiduciary in 29 U.S.C. § 1002(21)(A). The Trust Agreement indicates that the trustees shall manage and control the assets of the plan, and the ERISA Plan Summary Description for the Cal Council plant informed those covered by the plan that the trustees of the plan had the power to amend, modify or terminate plan policies. At a minimum, the trustees have offered sufficient evidence to create an issue of fact regarding their status as ERISA plan fiduciaries.

■ Even though under *AIA–BIT,* John Hancock and AA & C are not ERISA fiduciaries, if they are "parties in interest," they can still be subject to liability for engaging in

9. We agree with the district court that CELSOC is not an "employee organization" within the meaning of 29 U.S.C. § 1002(4).

The term "employee organization" means any labor union or any organization of any kinds, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan. 29 U.S.C. § 1002(4) (1994). The plain meaning of this provision, and the cases involving "employee organizations" in the ERISA context indicate that this provision covers labor unions and other traditional employee organizations established by employees. *See, e.g., Mason Tenders Dist. Council Welfare Fund v. United City Contracting, Inc.,* 925 F.Supp. 208, 210 (S.D.N.Y. 1996) (ERISA plan maintained by employer and union); *Caterpillar, Inc. v. International Union,* 897 F.Supp. 1150, 1156 (C.D.Ill.1995) (ERISA program provided by union); *Aquilio v. Police Benevolent Ass'n of New York State Troopers, Inc.,* 857 F.Supp. 190 (N.D.N.Y.1994) (police benevolent association an "employee organization" within the meaning of § 1002(4)). The CELSOC trust is not such an organization.

prohibited transactions as defined by 29 U.S.C. § 1106, for which the trustees can seek equitable relief under 29 U.S.C. § 1132(a)(3). *See Landwehr v. DuPree,* 72 F.3d 726, 734 (9th Cir.1995). In its claim for relief under § 1106, the Trustees claim that "[w]ith respect to the RSR, the compensation received by defendants for services rendered to the PLAN during the period the Policy was in effect substantially exceeds the reasonable value thereof." The receipt of excessive compensation could constitute involvement in a prohibited transaction. *See Concha v. London,* 62 F.3d 1493, 1504 (9th Cir.1995) (holding that allegations that non-fiduciary attorneys, *inter alia,* received "excessive compensation for legal services" was sufficient to state claim for § 1106 violation); *Nieto v. Ecker,* 845 F.2d 868, 873 (9th Cir. 1988) (same). The district court must determine whether AA & C and John Hancock are "parties in interest," a definition that includes "a person providing services to [an employee benefit] plan," 29 U.S.C. § 1002(14)(B)(1994), and, if so, whether either defendant was guilty of engaging in a prohibited transaction.

## CONCLUSION

For the reasons stated above, we AFFIRM the district court's dismissal of the Trustees claims for breach of fiduciary duty. We REVERSE and REMAND the district court's dismissal of the Trustees' prohibited transactions claims against AA & C and John Hancock. Each party shall bear their own costs.