109 F.3d 1353
 154 L.R.R.M. (BNA) 2871, 155 L.R.R.M. (BNA)
2199, 65 USLW 2641,
97 Cal. Daily Op. Serv. 2213,
97 Cal. Daily Op. Serv. 3528,
97 Daily Journal D.A.R. 4067,
97 Daily Journal D.A.R. 6065
 ASSOCIATED BUILDERS & CONTRACTORS, INC., Golden Gate
Chapter, Plaintiff-Appellant,
v.
LOCAL 302 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS;
Local 180 International Brotherhood of Electrical Workers;
Local 332 International Brotherhood of Electrical Workers;
Local 340 IBEW; Local 442 IBEW; Local 551 IBEW; Local 591
IBEW; Local 595 IBEW; Local 617 IBEW; Local 684 IBEW,
Defendants-Appellees.
 No. 95-16202.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 2, 1996.
Filed March 27, 1997.
As Amended on Denial of Rehearing
and Rehearing En Banc May 12, 1997.*
 
 Mark R. Thierman, San Francisco, California, for the plaintiff-appellant.
 Scott A. Kronland, Altshuler, Berzon, Nussbaum, Berzon & Rubin, San Francisco, California, for the defendants-appellees.
 Appeal from the United States District Court for the Northern District of California, William H. Orrick, District Judge, Presiding. D.C. No. CV-94-02890-WHO.
 Before SKOPIL and FLETCHER, Circuit Judges, and JOHN S. RHOADES* District Judge.
 FLETCHER, Circuit Judge:
 
 
 1
 The appellant, Associated Builders and Contractors, Inc., Golden Gate Chapter ("ABC"), is an organization of non-union construction contractors. The defendants are local unions affiliated with the International Brotherhood of Electrical Workers ("IBEW unions"), AFL-CIO. ABC claims that the IBEW unions' "job targeting programs," which provide payments by the unions to signatory contractors for bidding on 'targeted' projects, violate California law. The district court held that ABC's state-law claims are completely preempted by § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a). We disagree.
 
 I.
 
 2
 "Job Targeting Programs" ("JTPs") have engendered much controversy. In brief, these programs entail collecting wages from workers on public works projects and distributing them as subsidies to other union-signatory contractors who bid on targeted projects. Unions initiated JTPs as part of an effort to maintain and improve their share of certain construction markets. Job targeting is accomplished by union members voting to pay dues[1] which are used to subsidize union-signatory contractors to enable them to bid low enough to obtain jobs on which union members will be employed. The union-signatory contractors and the unions enter into written agreements ("job targeting agreements") which spell out the parties' rights and responsibilities under the JTP.
 
 
 3
 ABC brought suit against the IBEW unions in state court alleging a myriad of state-law claims. These claims include, inter alia, that the JTPs violate California's prevailing wage statutes because they allow contractors to avoid paying the full prevailing wages required by law. ABC also claimed that the JTPs violate § 17200 of the California Business and Professions Code[2] because they constitute unfair competition and allow low payments or "kickbacks" to employers on California Public Works projects in contravention of California's prevailing wage statutes contained in §§ 1778 & 1779 of the California Labor Code.[3]
 
 
 4
 The IBEW unions removed to federal court claiming that ABC's action is preempted by § 301 of the LMRA because, according to the unions, resolution of ABC's claims would necessarily entail interpretation of the job targeting agreements. ABC moved to remand, pursuant to 28 U.S.C. § 1447(c).[4] The district court denied ABC's motion holding that "the case turns on an interpretation of the labor agreements and ... LMRA § 301 preempts the state law claims."
 
 
 5
 The IBEW unions next moved for judgment on the pleadings, arguing that ABC had no claim under the LMRA. ABC requested leave to amend its complaint. The district court granted the IBEW unions' motion for judgment on the pleadings, denied ABC's motion to amend and dismissed ABC's complaint with prejudice. ABC timely appealed, challenging the district court's assertion of subject matter jurisdiction and denial of leave to amend.
 
 
 6
 The District Court asserted jurisdiction under 29 U.S.C. § 185(a) and 28 U.S.C. §§ 1331 and 1337. We have jurisdiction over this appeal of a final order. 28 U.S.C. § 1291.
 
 II.
 
 7
 The existence of subject matter jurisdiction is a question of law reviewed de novo. Sahni v. American Diversified Partners, 83 F.3d 1054, 1057 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 765, 136 L.Ed.2d 712 (1997); United States ex rel. Fine v. Chevron, U.S.A., Inc., 72 F.3d 740, 742 (9th Cir.1995) (en banc), cert. denied, --- U.S. ----, 116 S.Ct. 1877, 135 L.Ed.2d 173 (1996). The district court's decision regarding preemption is also a question of law reviewed de novo. Maynard v. City of San Jose, 37 F.3d 1396, 1405 (9th Cir.1994).
 
 
 8
 Ordinarily, a defendant may remove an action to federal court only if it could have been brought there originally. 28 U.S.C. § 1441(a) (1988); Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); Jackson v. Southern California Gas Co., 881 F.2d 638, 641 (9th Cir.1989); Hyles v. Mensing, 849 F.2d 1213, 1215 (9th Cir.1988). Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of [a plaintiff's complaint]." Caterpillar, 482 U.S. at 392, 107 S.Ct. at 2429. A federal defense, including the defense of preemption, generally may not form the basis of federal jurisdiction, "even if both parties concede that the federal defense is the only question truly at issue." Id. at 393, 107 S.Ct. at 2430 (citations omitted); Oklahoma Tax Comm'n v. Graham, 489 U.S. 838, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989). The complete preemption doctrine, however, provides an exception to the well-pleaded complaint rule. Caterpillar, 482 U.S. at 393, 107 S.Ct. at 2430; Whitman v. Raley's, Inc., 886 F.2d 1177, 1180-81 (9th Cir.1989). That doctrine applies when the preemptive force of a statute is so extraordinary that it converts an ordinary state law complaint into a federal claim. Caterpillar, 482 U.S. at 393, 107 S.Ct. at 2430.
 
 
 9
 Under "complete or super preemption," courts have reasoned that, by legislating within a given area, Congress intended to fully occupy that area. Thus, any attempt to claim a remedy outside the Congressional scheme is preempted whether or not there is a direct conflict with state law. When there is a finding of complete preemption, total occupation by the federal scheme pushes aside any state law claims in the area. To the extent that Congress has provided for private remedies, those remedies become the exclusive remedies available to plaintiffs, which means that their claims now necessarily arise under federal law. Such preemption exists under § 301 of the Labor Management Relations Act.[5] Id., 482 U.S. at 393, 107 S.Ct. at 2430. Accordingly, when § 301 is applied, the claim or claims can be removed from state court by the defendant.
 
 
 10
 Federal law exclusively governs a suit for breach of a collective bargaining agreement under § 301 and preempts any state cause of action based on a collective bargaining agreement or whose outcome depends on analysis of the terms of the agreement. Cook v. Lindsay Olive Growers, 911 F.2d 233, 237 (9th Cir.1990); Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 997 (9th Cir.1987). Though preemption under § 301 of the LMRA is implied, not express, the policy in favor of national uniformity in labor law is so powerful that it displaces state law with respect to claims involving the interpretation or enforcement of collective bargaining agreements. Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404, 108 S.Ct. 1877, 1880, 100 L.Ed.2d 410 (1988); United Steelworkers v. Rawson, 495 U.S. 362, 368, 110 S.Ct. 1904, 1909, 109 L.Ed.2d 362 (1990) (claim based on breach of union's duty of fair representation preempted). The Supreme Court "read the text of § 301 not only to grant federal courts jurisdiction over claims asserting breach of collective-bargaining agreements but also to authorizing the development of federal common-law rules of decision, in large part to assure that agreements to arbitrate grievances would be enforced, regardless of the vagaries of state law and lingering hostility toward extrajudicial dispute resolution." Livadas v. Bradshaw, 512 U.S. 107, 122, 114 S.Ct. 2068, 2077, 129 L.Ed.2d 93 (1994) (footnote omitted).
 
 
 11
 Although the language of § 301 is limited to "[s]uits for violation of contracts," it has been construed quite broadly to cover most state-law actions that require interpretation of labor agreements. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985) ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law." (internal citations omitted)). Many § 301 suits do not assert breach of the collective bargaining agreement and are nevertheless held preempted because they implicate provisions of the agreement. The IBEW unions contend that § 301 preempts ABC's state-law claims because, although the claims are not for breach of contract, their resolution will require interpretation of labor contracts--the job targeting agreements.[6]
 
 
 12
 Despite the breadth of § 301 preemption, not every claim which requires a court to refer to the language of a labor-management agreement is necessarily preempted. "[W]hile this sensible 'acorn' of § 301 preemption recognized in Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), has sprouted modestly in more recent decisions of [the] Court, it has not yet become, nor may it, a ... 'mighty oak.' " Livadas, 512 U.S. at 122, 114 S.Ct. at 2077 (citations omitted). In Livadas, the Supreme Court distinguished between claims which require interpretation or construction of a labor agreement and those which require a court simply to "look at" the agreement. 512 U.S. at 123-26, 114 S.Ct. at 2078-79. "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Id. at 124, 114 S.Ct. at 2078.
 
 
 13
 To effectuate the goals of § 301 it should be applied only to "state laws purporting to determine 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement,' " id. at 123, 114 S.Ct. at 2078 (quoting Lueck, 471 U.S. at 211, 105 S.Ct. at 1911), and to tort suits which allege "breaches of duties assumed in collective bargaining agreements." Id. The state law claims asserted by ABC neither relate to interpretation of the JTP agreement nor allege breach of those agreements. There is no question relating to what the parties agreed in the job targeting agreements nor what legal consequences were intended to flow from the agreements. Similarly, ABC does not allege that the unions breached these agreements. To the contrary, ABC asserts that the unions complied with the agreements and in so doing violated state-law. The only controversy concerns the legality of the agreements under state law. Thus, because there is no need to "interpret" the job targeting agreements in order to resolve ABC's state-law claims, § 301 does not preempt the claims.
 
 
 14
 Were we to extend § 301 to apply in cases where the very legality of a contract between an employer and a labor organization was at issue, parties would be able to immunize themselves from suit under state-laws of general applicability by simply including their unlawful behavior in a labor contract. Such a holding clearly exceeds the scope of § 301 preemption intended by Congress.
 
 
 15
 [N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law. Section 301 on its face says nothing about the substance of what private parties may agree to in a labor contract. Nor is there any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. In extending the preemptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.
 
 
 16
 Lueck, 471 U.S. at 211-12, 105 S.Ct. at 1911 (emphasis added; footnote omitted). The IBEW unions cannot avoid civil or criminal liability by contracting with employers and then claiming § 301 preemption.[7]
 
 
 17
 Therefore, we conclude that because ABC's state-law claims can be resolved without interpreting the job targeting agreements "the claim[§ are] 'independent' of the agreement[s] for § 301 preemption purposes." Lingle, 486 U.S. at 410, 108 S.Ct. at 1883.
 
 III.
 
 18
 The district court lacked subject matter jurisdiction over this case. Therefore, we vacate the district court decision and remand to the district court with instructions to remand to the state court. Because we hold that the district court lacked subject matter jurisdiction over this case, we need not address the other issues raised by ABC on appeal.
 
 
 19
 REVERSED.
 
 
 
 *
 Judge Fletcher votes to reject the en banc request and Judges Skopil and Rhoades so recommend
 
 
 *
 The Honorable John S. Rhoades, Senior United States District Judge for the Southern District of California, sitting by designation
 
 
 [1]
 The District of Columbia Circuit recently upheld a district court ruling that the Department of Labor's Wage Appeals Board's conclusion that payroll deductions for JTPs violated regulations designed to insure compliance with Davis-Bacon Act because the funds withheld were not "membership dues." Building and Const. Trades Dep't, AFL-CIO v. Reich, 40 F.3d 1275 (D.C.Cir.1994). ABC raises this issue for the first time on appeal. Because the issue was not raised or ruled upon below, it is not properly before this court
 
 
 [2]
 Section 17200 provides:
 As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with section 17500) of Part 3 of Division 7 of the Business and Professions Code.
 Cal. Bus. & Prof.Code § 17200.
 
 
 [3]
 California Labor Code § 1778 provides:
 Every person, who individually or as a representative of an awarding or public body or officer, or as a contractor or subcontractor doing public work, or agent or officer thereof, who takes, receives or conspires with another to take or receive, for his own use or the use of any other person any portion of the wages of any workman or working subcontractor, in connection with services rendered upon any public work is guilty of a felony.
 California Labor Code § 1779 provides:
 Any person ... who charges, collects or attempts to charge or collect, directly or indirectly, a fee or valuable consideration for registering any person for public work, or for giving information as to where such employment may be procured, or for placing, assisting in placing, or attempting to place, any person in public work ... is guilty of a misdemeanor.
 Both of these statutes are criminal laws. Yet neither the Attorney General of California, nor any local district attorney, filed or was asked to file criminal charges against the unions in relation to the Job Targeting Programs. It is unclear how ABC intended to bring these (criminal) charges against the IBEW unions. However, because we hold that the district court lacked subject matter jurisdiction over this case, we need not reach the merits of ABC's state-law claims.
 
 
 [4]
 ABC appeals the district court's denial of ABC's motion to remand to state court. The IBEW Unions argued that because ABC failed to seek interlocutory review of the denial of its motion to remand before the case proceeded to a final judgment on the merits, ordinarily ABC would not be able to challenge the denial of its motion on appeal. Harris v. Provident Life and Acc. Ins. Co., 26 F.3d 930, 932-33 (9th Cir.1994). However, after this case was briefed, the Supreme Court rejected this waiver theory. Caterpillar Inc. v. Lewis, --- U.S. ----, ---- & n.11, 117 S.Ct. 467, 475 & n.11, 136 L.Ed.2d 437 (1996). Thus, ABC was not required to seek interlocutory review of the denial of its motion to remand in order to preserve the issue on appeal. In any case, whether the denial of the motion to remand was correct depends entirely on whether § 301 preemption was properly applied. Unless the state-law claims are preempted, the district court lacked subject matter jurisdiction altogether. Thus, the relevant inquiry is identical for both questions--the providence of the district court's denial of the motion to remand and the district court's exercise of subject matter jurisdiction over the case
 
 
 [5]
 Section 301 provides:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 29 U.S.C. § 185(a).
 
 
 [6]
 ABC argues that § 301 should not apply in this case because the job targeting agreements between the IBEW unions and the signatory contractors are not "contracts" within the meaning of Section 301. Because we conclude, however, that ABC's state-law claims do not necessitate interpretation of the job targeting agreements, we need not decide whether these agreements are contracts for purposes of § 301
 ABC also argues that § 301 preemption should not apply here because ABC is not a party to the contracts in question and is neither an employer nor a labor organization. However, "it is well settled that parties in a § 301 action do not necessarily have to be employers or labor organizations. The word 'between' in § 301(a) refers to 'contracts' between an employer and a labor organization, not to 'suits' between them." Painting & Decorating Contractors Ass'n v. Painters & Decorators Joint Comm., 707 F.2d 1067, 1070-71 n. 2 (9th Cir.1983) (affirming lower court's exercise of jurisdiction over suit by one multi-employer trade group against other employer associations and labor organizations for breach of collective bargaining agreement). The fact that ABC is not a party to the agreement is not determinative. Id. at 1071.
 
 
 [7]
 In so holding, we do not express a view on the merits of ABC's state-law claims. Furthermore, our decision in no way precludes appellees from raising the defense of federal labor law preemption in state court. See San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)(when an activity is arguably subject to Section 7 or 8 of the National Labor Relations Act, the states as well as the federal courts must defer to the exclusive proficiency of the National Labor Relations Board); Lodge 76, Int'l Ass'n of Machinists v. Wisconsin Employment Relations Comm'n, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976)(self-help economic activities must be free of state regulation so that Congressional intent in enacting the federal law of labor relations will not be frustrated). These issues, however, must be addressed by the state court in which they were originally filed