185 F.3d 978 (9th Cir. 1999)
 LOCAL 159, 342, 343 & 444; LOCAL 343 UNITED ASSOC. JOURNEYMEN & APPRENTICE TRAINING TRUST FD; LOCAL 343 UNITED ASSOC.OF PLUMBING, Plaintiffs-Appellees and Cross-Appellants,
v.
NOR-CAL PLUMBING, INC.; NORTH BAY PLUMBING, INC.; ELMAR LEE PETTIT, a.k.a. ELMER LEE PETTIT; AUDREY JEAN PETTIT, Defendants-Appellants and Cross-Appellees.
 Nos. 96-16172
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted January 11, 1999
Submission Deferred January 12, 1999
Re-Submitted February 10, 1999
Decided July 27, 1999
 
 [Copyrighted Material Omitted]
 Patrick W. Jordan, Jeffer, Mangels, Butler & Marmaro, San Francisco, California, for the defendants-appellants and cross- appellees Nor-Cal Plumbing, Inc., and Elmar Lee Pettit.
 Henry F. Telfeian, Berkeley, California, for the defendants-appellants and cross-appellees North Bay Plumbing, Inc., and Audrey Jean Pettit.
 John J. Davis, Jr., McCarthy, Johnson & Miller, San Fran-cisco, California, for the plaintiffs-appellees and cross- appellants.
 Appeals from the United States District Court for the Northern District of California Susan Y. Illston, District Judge, Presiding. D.C. No. CV 87-02365 SYI.
 Before: Charles Wiggins, A. Wallace Tashima, and Barry G. Silverman, Circuit Judges.
 OPINION
 TASHIMA, Circuit Judge:
 
 
 1
 Nor-Cal Plumbing, Inc. ("Nor-Cal"), a plumbing contracting business, was a signatory to a collective bargaining agreement ("CBA") with Local 343 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry (the "Union"). The CBA incorporated a Trust Agreement obligating Nor-Cal to make pension and welfare benefit contributions to employee benefit plans (the "Trust Funds")[1] based on the number of hours worked by Nor-Cal's employees.
 
 
 2
 The owner and manager of Nor-Cal, Elmar Pettit, began "double-breasting" when he opened a non-union plumbing business, North Bay Plumbing, Inc. ("North Bay"), while still maintaining Nor-Cal, which was unionized. He started transferring work from Nor-Cal to North Bay, until Nor-Cal finally stopped bidding on jobs altogether and shut down its operations in 1987.
 
 
 3
 The Trust Funds sued Nor-Cal, North Bay, Pettit and his wife Audrey Pettit (collectively the "Employers"), on the theory that the CBA covered North Bay employees because North Bay was the alter ego of Nor-Cal. The suit primarily sought to recover contributions for hours worked by North Bay employees. A jury found that Nor-Cal and North Bay were alter egos and pierced the corporate veil as to Elmar Pettit, but not his wife. We must decide whether ERISA or LMRA provided subject matter jurisdiction over the action brought by the Trust Funds. We have appellate jurisdiction under 28 U.S.C. S 1291, and we affirm on the ground that jurisdiction over the suit existed under LMRA.[2]
 
 I.
 
 4
 The Trust Funds initially brought suit against the Employers in 1987, claimingthat Nor-Cal and North Bay were alter egos and a single employer; therefore, that contributions were owed under the Trust Agreement to the Trust Funds for work done by North Bay employees. The Trust Funds also sought to hold the Pettits individually liable for the unpaid contributions. In 1992, the district court granted summary judgment in favor of the Trust Funds. It found that North Bay was the alter ego of Nor-Cal and that Nor-Cal and North Bay had breached the CBA by failing to observe its terms and conditions of employment with respect to North Bay employees. The district court also entered judgment against the Pettits in their individual capacities under a veil-piercing theory. See UA Local No. 343 of the United Ass'n of Journeymen v. Nor-Cal Plumbing, Inc., 797 F. Supp. 767 (N.D. Cal. 1992).
 
 
 5
 On appeal, we reversed in part the district court's summary judgment ruling. See UA Local 343 of the United Ass'n of Journeymen v. Nor-Cal Plumbing, Inc., 48 F.3d 1465 (9th Cir.), cert. denied, 516 U.S. 912 (1995) ("UA Local 343 I"). We remanded the alter ego claim for trial because genuine issues of material fact remained as to whether Pettit had the intent to use North Bay in a sham effort to avoid Nor-Cal's CBA obligations. See id. at 1473-74. Similarly, we found that issues of fact remained on the request to pierce the corporate shell. See id. at 1475-76.
 
 
 6
 After a seven-week trial, a jury found that Nor-Cal and North Bay were indeed alter egos and that North Bay was therefore bound by the terms of the Trust Agreement. It also found Nor-Cal and North Bay liable for fraud. Finally, it determined that Pettit, but not his wife, should be held individually liable on a veil-piercing theory. It awarded compensatory damages in the amount of $1,812,897.60. The district court entered judgment on the verdict on April 15, 1996, and on May 21, 1996, entered an order denying the Employers' motion for judgment as a matter of law and for a new trial. Both sides now appeal.
 
 II.
 
 7
 Whether subject matter jurisdiction exists is a question of law reviewed de novo. See Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1153 (9th Cir. 1998). The district court's interpretation of a statute is also reviewed de novo. See United States v. Mack, 164 F.3d 467, 471 (9th Cir. 1999). The district court's finding that a party is a "fiduciary" under ERISA is a factual conclusion reviewed for clear error. See Steen v. John Hancock Mut. Life Ins. Co., 106 F.3d 904, 913-14 (9th Cir. 1997).
 
 III.
 A. Jurisdiction under ERISA
 
 8
 Section 502(e) of ERISA grants exclusive jurisdiction to the district courts to hear "civil actions under this subchapter brought by the Secretary [of Labor] or by a participant, beneficiary, [or] fiduciary." 29 U.S.C. S 1132(e)(1). Similarly, S 502(a)(3) provides that "a participant, beneficiary, or fiduciary" has standing to enforce any ERISA provisions. S 1132(a)(3)(ii). Therefore, "a federal court has no jurisdiction to hear a civil action under ERISA that is brought by a person who is not a `participant, beneficiary, or fiduciary.' " Harris v. Provident Life & Accident Ins. Co., 26 F.3d 930, 933 (9th Cir. 1994); see Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 27 (1983).
 
 
 9
 The Employers contend that the district court improperly exercised jurisdiction under ERISA because the Trust Funds are neither a participant, beneficiary, nor fiduciary of an ERISA plan.[3] The Trust Funds assert that they are indeed "fiduciaries" under ERISA.
 
 
 10
 ERISA "defines `fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan." Mertens v. Hewitt Assocs., 508 U.S. 248, 262 (1993) (emphasis in original).
 
 
 11
 [A] person is a fiduciary with respect to a plan [governed by ERISA] to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
 
 
 12
 29 U.S.C. S 1002(21)(A); see Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co., 809 F.2d 617, 625-26 (9th Cir. 1987) ("An ERISA fiduciary includes anyone who exercises discretionary authority over the plan's management, anyone who exercises authority over the management of its assets, and anyone having discretionary authority or responsibility in the plan's administration.").
 
 
 13
 In providing that "a person is a fiduciary with respect to a plan," the statute suggests that the "person" and the "plan" must be separate entities. 29 U.S.C.S 1002(21)(A). ERISA includes a "trust" in its definition of "persons," see 29 U.S.C. S 1002(9), and thus a trust fund could qualify as a fiduciary of a separate ERISA plan so long as it exercises discretionary authority over the management or administration of the plan or its assets. See Penn Cent. Corp. v. Western Conference of Teamsters Pension Trust Fund, 75 F.3d 529, 532 (9th Cir. 1996) (finding that pension trust fund, as sponsor of multiemployer pension plan, administered plan); Credit Managers Ass'n, 809 F.2d at 625-26 (finding that master trust could be fiduciary to several individual employer ERISA plans because it collected and disposed of plan premiums and arranged for payment of claims); U.S. Steel Mining Co. v. District 17, UMW, 897 F.2d 149, 152 (4th Cir. 1990) (holding that "[a]s the plan administrator, the [pension] fund is clearly a fiduciary"). We therefore disagree with the Second Circuit's contrary dicta that it is "difficult to imagine a situation in which a fund could fulfill" the role of a fiduciary and thus bring an ERISA suit in its own name. Pressroom Unions Printers League Income Sec. Fund v. Continental Assurance Co., 700 F.2d 889, 893 n.8 (2d Cir. 1983).
 
 
 14
 While there are cases where the facts reveal that a fund serves as a fiduciary to a pension plan that constitutes a separate entity, we do not confront such a situation here. The Trust Funds assert that they have fiduciary responsibility over separate ERISA plans, but the record does not reflect that the Trust Funds and the plans are distinct entities. The Trust Agreement and even the Trust Funds' complaint treat them as one and the same. We conclude that, in the instant case, the Trust Funds are the ERISA plans themselves. See 29 U.S.C. S 1002(1), (2) (providing that employee benefit plan governed by ERISA can be a "fund"). As such, they cannot be ERISA fiduciaries with respect to the plans.
 
 
 15
 We recognize that a few of our decisions have treated trust funds as proper plaintiffs under ERISA without setting forth the facts establishing that the trust funds are "fiduciaries" with respect to distinct ERISA plans. See, e.g., Pension Trust Fund for Operating Eng'rs v. Triple A Mach. Shop, Inc. , 942 F.2d 1457, 1461 (9th Cir. 1991) (permitting ERISA action by trust fund against employer for failure to report timely and accurate pension fund contributions); Brick Masons Pension Trust v. Industrial Fence & Supply, Inc., 839 F.2d 1333, 1335 (9th Cir. 1988) (trust funds allowed to bring ERISA suit for contributions from employer's alter ego); Operating Eng'rs Pension Trust v. Cecil Backhoe Serv., Inc., 795 F.2d 1501, 1503 (9th Cir. 1986) (trust fund permitted to bring ERISA action to recover deficient contributions from employer); Laborers Health & Welfare Trust Fund v. Kaufman & Broad, Inc. , 707 F.2d 412, 415-16 (9th Cir. 1983) (treating suit brought by pension trust funds as suit brought by fiduciaries of trust funds). In none of these cases, however, was the issue of the trust funds' standing under ERISA raised. Accordingly, these decisions do not establish any general rule that trust funds have standing as fiduciaries. See Leisnoi, Inc. v. United States, 170 F.3d 1188, 1192 n.7 (9th Cir. 1999) (holding that court's silent exercise of jurisdiction does not create binding prece- dent).
 
 
 16
 We have previously held that an ERISA plan itself does not have standing to sue under S 502(a) of ERISA because it is not a plan participant, beneficiary or fiduciary.[4] See Steen, 106 F.3d at 917. The Trust Funds urge and adopt the Sixth Circuit's approach to suits brought by plans under ERISA. See Saramar Aluminum Co. v. Pension Plan for Employees of the Aluminum Indus. and Allied Indus., 782 F.2d 577, 581 (6th Cir. 1986). In Saramar, the Sixth Circuit concluded that "[t]he Plan, as the party before the court, necessarily includes those who must act for the Plan to administer it and to effectuate its policies." Id. Because the Plan's administrators had discretionary control over the Plan, the court determined that "the Plan as a party, then, comes under the ERISA definition of a `fiduciary.' " Id. See also Louisiana Bricklayers & Trowel Trades Pension Fund & Welfare Fund v. Alfred Miller Gen. Masonry Contracting Co., 157 F.3d 404, 406 n.3 (5th Cir. 1998) (treating ERISA action brought by benefit plan as action brought by plan's trustees). Under Steen , 106 F.3d at 917, however, we are not free to follow the Sixth Circuit and we decline to do so.[5]
 
 
 17
 We conclude that the Trust Funds, as ERISA plans, are not fiduciaries entitled to sue under ERISA.[6] Accordingly, subject matter does not exist under ERISA over this action brought by the Trust Funds.
 
 B. Jurisdiction under LMRA
 
 18
 Although ERISA does not provide a source of jurisdiction, S 301 of LMRA, 29 U.S.C. S 185, does confer subject matter jurisdiction over the Trust Funds' action. Jurisdiction under S 301 extends to all "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . . " 29 U.S.C. S 185; see Textron Lycoming Reciprocating Engine Div., AVCO Corp. v. UAW, 118 S. Ct. 1626, 1629 (1998). This grant of jurisdiction covers actions to recover fringe benefits stemming from collective bargaining agreements. See, e.g., Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up Serv., Inc., 736 F.2d 516, 518 (9th Cir. 1984). Section 301 does not limit the parties who may bring suit so long as the object of the suit is the enforcement of rights guaranteed by an agreement between an employer and a labor organization. See Smith v. Evening News Ass'n, 371 U.S. 195, 200 (1962); Associated Builders & Contractors, Inc. v. Local 302 IBEW, 109 F.3d 1353, 1357 n.6 (9th Cir. 1997).
 
 
 19
 The Employers assert that S 301 jurisdiction extends only as far as ERISA jurisdiction. This argument fails because the Supreme Court has recognized that jurisdiction under LMRA may be broader than under ERISA. See Franchise Tax Bd., 463 U.S. at 25 & n.28 (reading ERISA's standing and jurisdictional provisions narrowly while noting that the Court had "not taken a restrictive view of who may sue under S 301") (emphasis in original).
 
 
 20
 The Trust Agreement in this case is part of the CBA between the Union and Nor-Cal. The Trust Funds' suit was brought to enforce Nor-Cal's obligations under the Trust Agreement to contribute pension and welfare benefits to the Trust Funds. The fact that the Trust Funds were not a signatory to the CBA is inconsequential, given the object of the lawsuit.
 
 
 21
 The Employers contend, however, that the Trust Funds are improper plaintiffs under S 301 and that the suit should have been brought by their Board of Trustees.[7] The fact that the Trust Funds are ERISA plans fatally undermines this argument. Section 502(d)(1) of ERISA bestows on ERISA plans the status of entities capable of bringing suit in any context in which the district court's exercise of subject matter jurisdiction is otherwise appropriate. See 29 U.S.C. S 1132(d)(1); Pressroom Unions, 700 F.2d at 893 (finding that "if a fund . . . wished to pursue a state law contract claim, S 1132(d)(1) would allow the fund to bring such an action its own name"). Therefore, the Trust Funds, as ERISA plans, are proper plaintiffs in this suit, and the action comes within the jurisdictional ambit of S 301.[8]
 
 
 22
 C. Jurisdiction Over Claim to Pierce the Corporate Veil
 
 
 23
 The Employers contend that LMRA does not provide a source of jurisdiction over the Trust Funds' attempt to pierce the corporate veil with respect to the Pettits.[9] We disagree.
 
 
 24
 We have previously considered requests to pierce the corporate veil in the context of LMRA suits to recover unpaid contributions and have developed a substantial body of federal common law regarding veil-piercing in this context. See Laborers Clean-Up Contract Admin. Trust Fund, 736 F.2d at 523-25; Audit Serv., Inc. v. Rolfson, 641 F.2d 757, 764 (9th Cir. 1981); Seymour v. Hull & Moreland Eng'g, 605 F.2d 1105, 1111 (9th Cir. 1979). A request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself. Cf. Peacock v. Thomas, 516 U.S. 349, 354 (1996) (holding that "[p]iercing the corporate veil is not itself an independent ERISA cause of action, but rather is a means of imposing liability on an underlying cause of action") (internal quotation omitted).
 
 
 25
 In UA Local 343 I, we noted that "[t]he veil-piercing doctrine does not come into play in this case unless and until [the Trust Funds] establish their right to a money judgment against Nor-Cal and North Bay under the alter ego doctrine . . . [T]he traditional rules on piercing the corporate shell at most affect the quality of a labor organization's remedy if it finds itself with a judgment against an insolvent corporate shell." 48 F.3d at 1476. In other words, whether the veil could be pierced as to Pettit hinged completely on the jury's determination of the Trust Funds' claim seeking enforcement of the Trust Agreement. The request to pierce the corporate shell is encompassed within LMRA's jurisdiction because it merely concerns the remedy attached to a breach of contract claim governed by LMRA.
 
 IV.
 
 26
 The district court erred in concluding that it had jurisdiction over the Trust Funds' lawsuit under ERISA, because the Trust Funds were not "fiduciaries." The district court, however, did properly exercise jurisdiction over the action, including the request to pierce the corporate veil as to the Pettits, under LMRA.
 
 
 27
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The Trust Funds are funds established under S 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.S 186, and in addition are pension and welfare benefit plans governed by S 3 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. S 1002.
 
 
 [2]
 In a separate, unpublished disposition filed concurrently herewith, we deal with the myriad of remaining issues appealed by the parties.
 
 
 [3]
 The Employers raised this argument for the first time in their post-trial motion for judgment as a matter of law. We consider the argument because a challenge to federal subject matter jurisdiction cannot be waived and may be raised at any time. See Quarty v. United States, 170 F.3d 961, 973 n.7 (9th Cir. 1999).
 
 
 [4]
 Section 502(d)(1) of ERISA provides that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity." 29 U.S.C. S 1132(d)(1). This provision does not itself establish federal jurisdiction over actions brought under ERISA by pension plans. Section 502(d)(1) serves only to ensure that pension plans are treated as entities capable of suing and being sued in circumstances where the court can properly exercise jurisdiction. See Pressroom Unions, 700 F.2d at 893 (ERISA's provision "[a]ffording plans the power to sue does not, however, imply that they may bring actions under ERISA; it merely authorizes suits to be brought by funds in other situations where there would properly be jurisdiction.").
 The Trust Funds imply that S 515 of ERISA, 29 U.S.C. S 1145, also confers jurisdiction over suits brought by trust funds. Section 515, however, merely creates a cause of action under ERISA for proceeding against an employer who is delinquent in making contributions to a plan. It does not create a separate basis for jurisdiction, but rather is subject to the jurisdictional restrictions in S 502(e)(1). See Greenblatt v. Delta Plumbing & Heating Corp., 68 F.3d 561, 568 (2d Cir. 1995) ("Section 515 does not by itself confer jurisdiction; it is simply a substantive requirement that an employer make contributions to a multi-employer ERISA plan . . . ." ).
 
 
 [5]
 A rule treating plans as incorporating their fiduciaries for purposes of subject matter jurisdiction and standing might also raise some unintended and undesirable consequences. For example, permitting a plan to bring suit as a fiduciary could cause statute of limitations problems. Under ERISA, the running of the statute of limitations does not commence until the plaintiff gains actual knowledge of the breach or violation, unless more than six years has passed since the breach or violation has occurred. See 29 U.S.C. S 1113. If the plan itself is the plaintiff, whose knowledge would trigger the statute? See Landwehr v. DuPree, 72 F.3d 726, 732 (9th Cir. 1995) (finding that "limitations period begins to run on the date that the person bringing suit learns of the breach or violation" rather than from first date that plan, through any of its agents, learned of breach because under latter interpretation, if fiduciary of plan breached his ERISA duties, statute would start to run on first day that fiduciary knew of breach, defeating purpose of tolling provision).
 
 
 [6]
 In Corder v. Howard Johnson & Co., 53 F.3d 225, 229-30 (9th Cir. 1995), we noted that we have sometimes applied S 502(g)(1) of ERISA, which provides that attorney's fees may be awarded when an action is brought by a participant, beneficiary, or fiduciary or an ERISA plan, to situations in which the action was brought by a plan itself against an employer for unpaid contributions. In searching for a rationale for allowing fees to a clearly unenumerated party under S 502(g)(1), we noted that "[p]erhaps the courts have presumed that a plan suing an employer for ERISA contributions is acting as an ERISA fiduciary. " Id. at 230 n.4. We concluded that these cases had seemingly carved out an exception permitting attorney's fees awards in situations in which multi-employer benefit plans had sued their employers for non-payment of ERISA contributions and lost. See id. at 230. This weakly supported de facto exception to ERISA's strict standing rules is an insufficient basis for adoption of a rule which would presume that plans are acting as fiduciaries when they bring suit under ERISA for unpaid employer contributions.
 
 
 [7]
 The Employers contend that we should defer to the legal principle employed by most states that a trustee must bring suit on behalf of a trust. "State law may be resorted to . . . only if it effectuates the policy which underlies federal labor legislation." Seymour v. Hull & Moreland Eng'g, 605 F.2d 1105, 1109 (9th Cir. 1979). This state law preference does not compliment federal labor policy: the Supreme Court has interpreted S 301 as not limiting the parties who may bring suit in order to further the policy that all suits regarding collective bargaining agreements be decided under a uniform body of federal substantive law. See Smith, 371 U.S. at 200-01.
 
 
 [8]
 The Trust Funds alleged only one cause of action that falls only under ERISA and not LMRA: their claim that the Pettits should be personally liable for causing Nor-Cal and North Bay to violateS 515 of ERISA, 29 U.S.C. S 1145. The district court dismissed this claim for failure to state a claim under ERISA, and the Trust Funds appeal this dismissal. We now affirm the dismissal on the ground that there is no jurisdiction to support this claim that is wholly derivative of Nor-Cal and North Bay's liability under ERISA S 515. See Granite State Ins. Co. v. Smart Modular Techs., Inc, 76 F.3d 1023, 1026 (9th Cir. 1996) (finding that we may affirm the district court's judgment on any ground supported by the record).
 
 
 [9]
 The jury found only Pettit, and not his wife, individually liable.